UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10188-RGS

GAETANO T. PICCADACI, JR.

v.

TOWN OF STOUGHTON and JOHN BATCHELDER

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

February 15, 2019

STEARNS, D.J.

Gaetano Piccadaci, Jr., brought this lawsuit in Norfolk Superior Court against his former employer, the Town of Stoughton (Stoughton), and his quondam supervisor, John Batchelder,[1] primarily for wrongful termination. Piccadaci alleges that defendants discriminated against him based on his age, disability, race and national origin, and gender in violation of state and federal law. More specifically, the Complaint sets out one claim against Batchelder individually for harassment and retaliation (Count VI) and six claims against defendants collectively for violating the Age Discrimination in Employment Act (ADEA) (Count I), the American with Disabilities Act

---

[1] The Complaint misspells Batchelder as "Batcheler." *See* Mot. to Amend (Dkt # 26).

(ADA) (Count II), Title VII of the Civil Rights Act of 1964 (Counts III and IV), Mass. Gen. Laws ch. 151B (Count V), and the Family Medical Leave Act (FMLA) (Count VII).[2] Defendants removed the case to the federal district court and now move for summary judgment on all counts.[3] For the reasons to be explained, defendants' motion for summary judgment will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to Piccadaci as the nonmoving party, are as follows. In 2002, Piccadaci began working as a seasonal contractor plowing snow for Stoughton. On November 4, 2013, Stoughton hired him as a full-time truck driver and laborer for a probationary period of one year.[4] Throughout his employment, Piccadaci was supervised by Batchelder, the Superintendent of Stoughton's Department of Public Works (DPW).

---

[2] The Complaint incorrectly labels the final count as "Count IV."

[3] Piccadaci has withdrawn his age and gender discrimination claims. *See* Opp'n (Dkt # 25) at 6. Also, while the Complaint alleges national origin discrimination, Piccadaci does not address this claim, even in passing, in his Opposition to Summary Judgment. The court therefore deems the national origin claim waived.

[4] After his first six months on the job, Piccadaci's probationary period was extended for an additional six months. Stmt of Facts (SOF) (Dkt # 14), Ex. 2 at 30:2-9.

In January of 2014, Batchelder questioned Piccadaci's carpentry skills. Piccadaci represented himself as a finish carpenter, but neither Batchelder nor Thomas Fitzgerald, the assistant DPW director, considered Piccadaci's woodworking skills to meet finish carpentry standards. That winter, Batchelder also questioned Piccadaci's ability to drive a stick shift truck, even though he had a Class A CDL license. Piccadaci interpreted Batchelder's criticisms as verbal attacks.

On August 2, 2014, Piccadaci began experiencing stomach pains, but he continued to work. On August 18, 2014, he presented to Dr. Louis Silvagnoli, Jr., who opined that he could return to work. SOF, Ex. 4. On August 26, 2014, he sought a second opinion from Dr. Syed Imam, who advised him not to return to work that week. SOF, Ex. 5. The doctors' notes, which were provided to Fitzgerald, did not mention a disability or request an accommodation.

During the year, Fitzgerald heard from several foremen that they were not pleased with Piccadaci's performance. They characterized him as lazy, unreliable, and difficult to work with. In particular, Piccadaci was criticized for failing to respond to four out of six overtime sanding requests that winter. Fitzgerald spoke with Batchelder about the foremen's concerns and recommended that Piccadaci be terminated. At the end of August,

3

Batchelder informed Piccadaci that he would be fired. On August 27, 2014, Michael Hartman, Stoughton's Town Manager, formally notified Piccadaci of his termination.[5]

On June 4, 2015, Piccadaci filed a charge with the Massachusetts Commission Against Discrimination (MCAD), alleging that Stoughton and Batchelder had wrongfully terminated him. After the MCAD found a lack of probable cause on March 31, 2017, Piccadaci initiated this lawsuit in Norfolk Superior Court on August 11, 2017. Defendants then removed the case to this court on January 31, 2018.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder

---

[5] Hartman's letter more specifically stated that Stoughton would not be "extend[ing] [his] temporary appointment to the position." Opp'n, Ex. 9.

to resolve the issue in favor of either side." *Nat'l Amusements v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

***Disability Discrimination***

To make out a prima facie case of disability discrimination under the ADA and Massachusetts Chapter 151B, Piccadaci must show that: (1) he has a disability within the meaning of the law; (2) he is nonetheless able to perform the essential functions of his job, with or without reasonable accommodation; (3) he suffered an adverse employment action; and (4) his employer replaced him with a non-disabled person or otherwise sought to fill the job. *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996); *Dartt v. Browning-Ferris Indus., Inc.*, 427 Mass. 1, 3 (1998).[6] If Piccadaci

---

[6] In construing Chapter 151B, Massachusetts courts look to federal law for guidance. *See Tate v. Dep't of Mental Health*, 419 Mass. 356, 361 (1995) ("In construing the Commonwealth's employment discrimination statute, we have looked to the considerable case law applying the analogous Federal statute for guidance."); *Cox v. New Eng. Tel. & Tel. Co.*, 414 Mass. 375, 382 (1993) (noting that the Court may look to the "considerable case law construing and applying the analogous Federal statute . . . for guidance.").

succeeds in establishing a prima facie showing of disability discrimination, the burden then shifts to defendants to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Trs. of Forbes Library v. Labor Relations Comm'n*, 384 Mass. 559, 564 (1981). If defendants meet this burden, it then falls to Piccadaci "to prove that the adverse action was taken 'because of his . . . handicap,' and not for the reason proffered by the employer." *Gannon v. City of Bos.*, 476 Mass. 786, 794 (2017) (citation omitted).

The court will assume that Piccadaci has made the requisite prima facie showing. He alleges that he suffers from irritable bowel syndrome and an anxiety disorder, but that he is nonetheless qualified to perform the essential functions of his job as a truck driver and laborer. His termination ten months into his probationary period undoubtedly constitutes an adverse employment action. Defendants, in turn, have articulated a lawful business reason for firing Piccadaci, namely his poor work performance and spotty attendance record.

Piccadaci contends that defendants' proffered reason is pretextual because he was not formally or informally disciplined prior to the

termination.[7] As evidence, he points to a fellow employee, Carlos Viveiros, who similarly refused to work overtime, but was not terminated.[8] He also contends that Batchelder's rejection of his August 18, 2014, medical note "indicates a discriminatory animus" attributable to his handicap. Opp'n at 7. In this regard, he cites the close proximity of the rejection of his doctors' notes to his termination as evidence of causation.

Defendants argue, and the court agrees, that Piccadaci has failed to present sufficient evidence from which a reasonable factfinder could conclude that he was terminated "because of" his disability. Prior to being hired, Piccadaci did not identify any disabilities, and after he had reviewed the job description, did not claim any employment restrictions. He also never told his supervisors that he suffered from an anxiety disorder or irritable bowel syndrome, nor did he request any accommodation for his

---

[7] Although Piccadaci claims to have "never received any complaints about his work performance," Opp'n at 5, he conceded in his deposition that Batchelder spoke with him in January of 2014 about his deficient carpentry and driving skills and in March of 2014 about his failure to respond to overtime requests. SOF, Ex. 1 at 112, 117: 11-20.

[8] Piccadaci further argues that overtime street sanding was not required. But he acknowledged in his deposition that "[p]low time was always mandatory" for truck drivers. SOF, Ex. 1 at 109:1-4.

alleged disabilities.[9] While Piccadaci's daughter's testified that she was told by a Stoughton employee that Batchelder would refuse to accept the August 18, 2014 medical note, *see* Opp'n, Ex. 8, Piccadaci concedes that Fitzgerald took the note and placed it is his personnel file.[10] He also concedes that neither of his doctors' notes referred to any medical conditions.

Further, the fact that Piccadaci, unlike Viveiros, was terminated for failing to respond to overtime calls does not reasonably support an inference that defendants' business reason for his termination was pretextual. Batchelder testified that Piccadaci was the only *probationary* employee who did not sand or answer his phone. SOF, Ex. 2 at 36:2-9. Viveiros, in contrast, had been a full-time Stoughton employee for over twenty years. *Id.* at 41:4-6. Fitzgerald explained in his deposition that there was "no determination for whether we were going to keep Mr. Viveiros as a permanent employee, as opposed to Mr. Piccadaci," SOF, Ex. 3 at 65:17-24, and that Piccadaci's case was judged on his own merits. Whether there might have been a better way to handle Piccadaci's firing is not for the court to decide. *See Mesnick v. Gen.*

---

[9] Piccadaci acknowledges that he "did not inform [defendants] about a specific disability." Opp'n at 4.

[10] Piccadaci testified that his daughter delivered the August 26, 2014 doctor's note (and not the August 18, 2014 note), SOF, Ex. 1 at 52:4-8, but the discrepancy is immaterial.

*Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions."); *see also Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997) ("If the defendant's reasons are not discriminatory, and if the plaintiff does not prove that they are pretexts, the plaintiff cannot prevail.").

***Race Discrimination***

To make out a prima facie case of race discrimination under Massachusetts law and Title VII of the Civil Rights Act of 1964, Piccadaci must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) his employer took an adverse employment action against him; and (4) there is evidence of a causal connection between his membership in the protected class and the adverse employment action. *See Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011); *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 680 (2016). Piccadaci fails on at least the fourth element of his prima facie case.

Piccadaci's claim is based on a single incident in July of 2014, when Batchelder remarked that an African American worker was playing "the black card." SOF ¶ 24. Piccadaci was offended by the remark because the worker was a friend of his, and because he was then engaged to a black

woman of Indian and Cape Verdean descent.[11] He also argues that, as "a self-identified dark-skinned, Sicilian/Italian," he "felt prejudiced by [Batchelder's] racial comments." Opp'n at 8. Piccadaci, however, offers no evidence that defendants considered race when deciding to terminate him. The isolated remark attributed to Batchelder is insufficient to establish a prima facie case of race discrimination, let alone to withstand summary judgment. *See Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 329 (1st Cir. 1996) ("Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent."); *Finney v. Madico, Inc.*, 42 Mass. App. Ct. 46, 50-51 (1997) ("[A]n isolated, ambiguous, or stray remark is insufficient, standing alone, to prove discriminatory employment action.").

***Harassment***

Piccadaci's "harassment" claim is, in essence, a hostile work environment claim. To prevail on this claim, Piccadaci must establish that he worked in an environment so hostile as to unreasonably interfere with his ability to perform his work. *Muzzy v. Cahillane Motors, Inc.*, 434 Mass. 409,

---

[11] The court assumes, without deciding, that "Black by Association," Opp'n at 9, is a valid claim under state and federal law. *Cf. Flagg v. AliMed, Inc.*, 466 Mass. 23, 37 (2013) ("[W]e hold that associational discrimination based on handicap is prohibited under [Mass. Gen. Laws ch. 151B] § 4(16)."); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) ("Title VII forbids discrimination on the basis of association with or advocacy for a protected party.").

411 (2001). The hostile conduct alleged must have been severe and pervasive, and would have been perceived as such by a reasonable person. *Sahir v. Suffolk Cnty. Sheriff's Dep't*, 67 Mass. App. Ct. 596, 603 (2006).

Piccadaci alleges that Batchelder harassed him based on his "fiancé's race and national origin, [his] age, gender and/or handicap."[12] Compl. ¶ 68. Piccadaci alludes to "a pattern of harassment" based on Batchelder's questioning of his carpentry and driving skills, as well as Batchelder's calling him and another employee "assholes." Opp'n at 8. Even accepting these allegations as true, they do not amount to an environment "'pervaded by harassment or abuse.'" *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001), quoting *College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987); see also *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("'[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee' does not sufficiently affect the conditions of employment to implicate Title VII.") (alteration in original and citation omitted).

### *Retaliation*

To make out a prima facie case of retaliation under Massachusetts law, Piccadaci must show that: (1) he engaged in a protected activity; (2) he

---

[12] Batchelder testified that he never met Piccadaci's fiancé. SOF ¶ 28.

suffered a materially adverse action; and (3) the adverse action was causally linked to his protected activity.  *Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-592 (2004).  Piccadaci stumbles here over the first element of his prima facie case because he does not identify a protected activity.

While the protected activity element may be satisfied by a plaintiff's opposition to what is reasonably perceived as a discriminatory employment practice, the most that Piccadaci alleges is that Batchelder would not personally accept his doctor's note.  Even if the tendering of the note could be considered a petitioning activity of some sort, the medical note in question flagged no issue that might conceivably have incited an urge for discriminatory retaliation.  It did not mention Piccadaci's disability, nor did it request an accommodation.  *See Ritchie v. Dep't Of State Police*, 60 Mass. App. Ct. 655, 664-665 (2004) (providing examples of protected activities). Piccadaci's retaliation claim, therefore, fails as a matter of law.

### *Wrongful Termination*

Piccadaci alleges that "Stoughton wrongfully terminated [him] by not allowing him to present a disability note and by denying him use of sick/vacation time or the Family Medical Leave Act or equivalent Massachusetts law." Compl. ¶ 71.  The FMLA entitles an eligible employee to twelve work weeks of leave that may be taken intermittently for "a serious

health condition." 29 U.S.C. § 2612(a)(1)(D). To establish entitlement, Piccadaci must demonstrate by a preponderance of the evidence that: (1) he was an "eligible employee"; (2) Stoughton is a "covered employer"; (3) he gave adequate notice of his request for the protected leave; and (4) the leave was necessitated by reasons covered by the FMLA. *Furtado v. Standard Parking Corp.*, 820 F. Supp. 2d 261, 280 (D. Mass. 2011). Even assuming that he was an eligible employee, Piccadaci did not notify Stoughton of any request for an FMLA leave, hence his prima facie case collapses.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE